***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. Employee is Gene Ortega.
2. Employer is Charles Gilbert Gibbs Merchandise
3. Charles Gilbert Gibbs Merchandise was self-insured with National Benefits Group as the servicing agent handling the risk.
4. Defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed between the employer and employee on February 2, 2000.
5. The average weekly wage at the time of the injury was $700.00, subject to verification by Form 22.
6. The medical records, reports, and statements attached to the Pre-Trial Agreement as part of the evidence.
7. Form 1099 for the year 2000 is a part of the evidence.
8. The depositions of Dr. Hannum and Janet Cox Melton are a part of the evidence.
9. The Pre-Trial Agreement dated July 18, 2001 which was submitted by the parties is a part of the evidence and is incorporated by reference.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. Plaintiff, who is fifty-one years old and a high school graduate with additional college credits, began working for defendant hardware and building supply store in 1996. In February 2000 he was serving as the store manager. His duties included assisting customers, working at the cash register, ordering merchandise and stocking merchandise. For several months prior to the time in question, the store was short-handed so plaintiff had been working long hours and was usually working six days per week. The store could become very busy and, being one employee short, plaintiff was under more pressure to take care of the customers.
2. On an unknown date in February 2000, plaintiff was very busy at work and preoccupied with the tasks at hand when something happened and he began to have left knee pain. Thinking that the injury was minor and would resolve on its own, he continued working and essentially ignored it. However, within a day or two, he noticed a bruise on his knee. A knot subsequently developed and his knee began to swell. At this point he went to the office manager during a short break at work and showed her his knee, which was clearly swollen. Although he told her that he had hurt it at work, he did not tell her how the injury occurred.
3. Plaintiff subsequently advised Anna May Gibbs, one of the store owners and his supervisor, of the injury. However, he was unable to tell her exactly how he hurt himself because he could not remember.
4. Ms. Gibb's son was supposed to move back to the area and assume management of the store at any time. In part for that reason, plaintiff decided not to get medical treatment immediately. When he finally called for an appointment, the earliest he could see the doctor was March 6, 2000. Dr. Hannum, an orthopedic surgeon, examined him on that date. He told the doctor that he was not sure what had caused the bruise but that he had had the bruise for approximately two weeks before the knee started swelling. Dr. Hannum prescribed anti-inflammatory medication for what appeared to be some sort of acute knee problem. However, he did not reach a diagnosis at that time. Plaintiff returned after two weeks with increased knee pain as well as symptoms of popping, clicking and instability within the knee. Dr. Hannum ordered an MRI which revealed an unusual tear of the lateral meniscus and some sort of fragment or loose body within the joint. In view of the findings and the persistent swelling of the knee, the doctor recommended a diagnostic arthroscopy.
5. On April 11, 2000 Dr. Hannum performed surgery on plaintiff's knee and discovered that the anterior cruciate ligament was torn from the bone, that the lateral meniscus had been significantly shredded and that the chondral surfaces were chronically degraded. Only the anterior cruciate ligament tear appeared to be acute. The other conditions were chronic and would have preexisted the incident at work. Dr. Hannum cleared away as much of the degenerated cartilage as he could but did not address the ligament tear in that operation. When plaintiff later saw him in follow-up, they discussed treatment options for the ligament tear. However, in view of the chronic degenerative disease within the joint, Dr. Hannum did not recommend further surgery at that time. He anticipated that the ligament would not be repaired and that within approximately 15 years plaintiff would have to have a total knee replacement.
6. Plaintiff's symptoms slowly improved after the surgery and he performed exercises to strengthen his knee in order to minimize any instability. Dr. Hannum was pleased with his progress and on September 18, 2000 determined that he had reached maximum medical improvement.
7. In retrospect, plaintiff has decided that he must have struck his knee on something at work when he hurt it. However, he also told Dr. Hannum that he might have twisted it. Even if he had bumped it against something, the doctor found that to be an unusual history in view of the ultimate diagnosis and could not quantify how significant that sort of injury would have been. In any event, since plaintiff really did not remember how he actually injured his knee, no specific findings are made in that regard. It is unfortunate that he was so focused on his job duties that he disregarded the circumstances giving rise to his injury, but his assumptions later about what he thought must have happened earlier are not sufficient on which to base legal findings of fact. Without knowing the specific circumstances, a determination cannot be made as to whether there were an interruption of his regular work routine at the time of his injury.
8. Plaintiff suffers from a knee condition which may have resulted from an incident at work, he has failed to prove an injury by accident within the meaning of the act. The greater weight of the medical evidence does not indicate that the anterior cruciate ligament tear is causally related to any work-related incident.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff did not prove that on an unknown date in February 2000 he sustained an injury by accident arising out of and in the course of his employment which resulted in the anterior cruciate ligament tear for which he was subsequently treated. G.S. § 97-2(6).
2. Plaintiff is not entitled to benefits under the Workers' Compensation Act for his left knee condition. G.S. § 97-2 et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. This claim must, under the law, be and it is hereby DENIED.
2. Each side shall pay its own costs.
This the ___ day of July 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER